TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00565-CR







Marvin J. Migdol, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF DALLAS COUNTY, 291ST JUDICIAL DISTRICT


NO. F-9102836-KU, HONORABLE GERRY HOLDEN MEIER, JUDGE PRESIDING







 A jury found appellant Marvin J. Migdol guilty of the offense of theft of property
over the value of $750 and under the value of $20,000, a third degree felony. The trial court
assessed punishment at imprisonment for ten years, probated. In his sole point of error, appellant
asserts that he was denied a speedy trial in violation of his federal and state constitutional rights. 
U.S. Const. amend. VI, XIV; Tex. Const. art. I, § 10. Because appellant does not argue that his
state right to a speedy trial is greater than his federal right, we need only consider his federal
constitutional right. Emery v. State, 881 S.W.2d 702, 707 n.8 (Tex. Crim. App. 1994). We will
overrule appellant's point of error and affirm the judgment of the trial court.

 The federal constitutional right to a speedy trial is applicable to state prosecutions. 
Klopfer v. North Carolina, 386 U.S. 213, 222-23 (1967). The length of delay for purposes of
speedy trial analysis is measured from the time a defendant is arrested or formally charged. 
Marion v. United States, 404 U.S. 307, 313 (1971); Harris v. State, 827 S.W.2d 949, 956 (Tex.
Crim. App. 1992). To trigger a speedy trial analysis it must be shown that the interval between
accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial"
delay. Doggett v. United States, 120 L. Ed. 2d 520, 528 (1992). When post accusation delay
approaches one year most courts have held that it triggers the speedy trial inquiry. Id.; Harris,
827 S.W.2d at 956.

 To determine whether the constitutional right to a speedy trial has been denied, the
Supreme Court devised an analysis that has since been universally followed. Barker v. Wingo, 407
U.S. 514, 530 (1972). The analysis mandated has four factors: (1) the length of the delay, (2)
the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) any
prejudice resulting to defendant from the delay. Id; Deeb v. State, 815 S.W.2d 692, 704 (Tex.
Crim. App. 1991); Sinclair v. State, 894 S.W.2d 437, 439 (Tex. App.--Austin 1995, no pet.). 
The application of these factors to a given case is much more difficult than their statement. 
Evidence bearing on each factor must be considered and weighed on a case by case basis. Then
it is necessary to strike a balance between the factors in the circumstances of the particular case. 
Barker, 407 U.S. at 530; Emery, 881 S.W.2d at 708. 



FACTS AND PROCEDURAL HISTORY OF CASE


 In February 1988, the complainant wanted to obtain a convenience store franchise
and he sought help from appellant who purported to be an expert in the field of franchise
marketing. The complainant met several times with appellant in the appellant's office and talked
with appellant numerous times on the telephone. On March 15, 1988, the complainant gave
appellant a cashier's check for $19,500. It was alleged that appellant obtained that check from
complainant by deception. The complainant testified that appellant was to place the money in
escrow to pay for a franchise. Appellant testified the money was given to him to pay for his
research and advice in aiding appellant to secure a franchise. Appellant terminated the business
relationship with the complainant on March 25, 1988. Before the indictment in this case was
returned, the complainant filed a civil action and, after trial, obtained a judgment against
appellant. That judgment had not been satisfied at the time of this criminal trial.

 On August 12, 1991, the indictment against appellant was returned and filed. It
was not until 23 months later that appellant was arrested on July 11, 1993. On September 20,
1993, appellant filed a motion to dismiss the indictment on grounds that he had been denied a
speedy trial. That motion was heard on October 27, 1993, and subsequently denied. Other
defense motions were heard on January 24, 1994. On February 28, 1994, a jury was impaneled
and the trial began; the jury's verdict was received March 4, 1994. As needed, other facts will
be summarized in connection with our speedy trial analysis.



LENGTH OF DELAY


 In making the Barker v. Wingo analysis, the length of the delay has two functions. 
First, it has the trigger function in determining whether the complete speedy trial analysis is
necessary. In this case the 23 month delay between formal accusation and appellant's arrest is
sufficient to require the full speedy trial analysis. The second function of the length of delay is
its bearing on the other factors and the extent to which the delay exceeds the bare minimum
considered "presumptively prejudicial." Doggett, 120 L. Ed. 2d at 528.

 In assessing the seriousness of the length of delay in its second function, the many
circumstances of each case must be considered. In Barker, although the delay was five years, the
Supreme Court, in balancing the factors, found that Barker was not denied a speedy trial. On the
other hand, in Doggett, in balancing the factors, the Supreme Court found that a delay of eight
years contributed to the denial of a speedy trial.

 We observe that preindictment delay has not been accorded any weight in
determining a defendant's sixth amendment right to a speedy trial. Even though a defendant's
defense may be somewhat prejudiced by the lapse of time caused by preindictment delay, the
preindictment delay is "wholly irrelevant" to a sixth amendment speedy trial claim. See United
States v. Lovasco, 431 U.S. 783, 788-90 (1977). Appellant has neither in the trial court nor on
appeal made a due process claim of oppressive preindictment delay.



REASON FOR DELAY


 In considering the reason for the delay, different weight should be assigned to
different reasons. A deliberate attempt to delay the trial in order to hamper the defense would
weigh heavily against the State. A more neutral reason such as negligence or overcrowded courts
should be weighed less heavily, but nevertheless should be considered since the ultimate
responsibility for such circumstances must rest with the State rather than the defendant. Barker,
407 U.S. at 531; Strunk v. United States, 412 U.S. 434, 435 (1973); Turner v. State, 545 S.W.2d
133, 137 (Tex. Crim. App. 1976). Appellant argues that even though the trial court apparently
believed the State's meager efforts to serve the arrest warrant were sufficient, the delay was the
State's fault and he bears no blame for the delay.

 On August 15, 1991, soon after the indictment was returned, a sheriff's
investigator, armed with a warrant and intending to arrest appellant, went to the address where
the appellant had resided when the alleged offense was committed. The lady who then resided
at that address did not know appellant and said that he had not lived there in the last year. After
some other efforts, the officer returned the unserved warrant to the "Research Division" of his
office, on September 6, 1991. Approximately six months later the complainant supplied the
assistant district attorney in charge of the case with another address where appellant could be
served. The assistant district attorney contacted the warrant officers supervisor relaying the new
address. The officer at the direction of his supervisor obtained a "mug shot" of appellant and
checked his prior record. The officer then went to the new location but was unable to find
appellant. The officer talked to people at the complex but was unsuccessful in his attempt to find
and arrest appellant. Appellant was stopped for a traffic offense in July 1993 and his arrest for
this offense was then made. Appellant had lived at three different addresses after leaving the
address where he lived at the time of the alleged offense. He testified that the other places he had
lived were in the same area and that he had notified the post office and had changed the residence
address on his driver's license record each time he moved. Appellant also insists he was listed
in the telephone directory during this time.

 Because the trial court is the judge of the credibility of the witnesses and the weight
to be given their testimony, the trial court's ruling on speedy trial fact issues should be given
deference by a reviewing court. Hamilton v. State, 621 S.W.2d 407, 410 (Tex. Crim. App.
1981); Deloney v. State, 734 S.W.2d 6, 7 (Tex. App.--Dallas 1987, pet. ref'd); Allen v. State, 722
S.W.2d 514, 516 (Tex. App.--Beaumont 1986, no pet.). The trial court's implicit finding that the
23 month delay in arresting appellant was reasonable in the circumstances of this case and was
not in itself sufficient to show appellant had been denied a speedy trial is supported by the
evidence. The delay was not deliberate and in view of the evidence and the trial court's ruling,
the length of the delay may be characterized as reasonable and not the result of negligence. 
However, we will continue the speedy trial analysis especially considering whether the delay
prejudiced appellant's defense.



APPELLANT'S ASSERTION OF HIS RIGHT TO A SPEEDY TRIAL


 A defendant's assertion of his speedy trial right is entitled to great weight in
determining whether he has been deprived of that right, and the failure to assert the right makes
it difficult for a defendant to prove he was denied a speedy trial. Barker, 407 U.S. at 531. 
Appellant did not file a motion for a speedy trial, but he argues that he did not know he was
charged with the offense for 23 months and that at that time he had already been deprived of a
speedy trial. Therefore, he argues that his motion to dismiss the indictment because of the denial
of a speedy trial was appropriate and a sufficient assertion of his rights. In these circumstances
which are closely related to the reason for the delay, appellant should not be denied consideration
of the other factors of the speedy trial analysis.



PREJUDICE TO APPELLANT'S DEFENSE RESULTING FROM DELAY


 Prejudice, the fourth factor in the analysis, should be assessed in light of a
defendant's interests that the speedy trial right was designed to protect. Barker, 407 U.S. at 532;
Emery, 881 S.W.2d at 709. The Supreme Court has identified three such interests. They are: 
(1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused
resulting from the pending charges, and (3) to limit the possibility that the defendant's defense will
be impaired. Barker, 407 U.S. at 532; Smith v. Hooey, 393 U.S. 374, 378 (1969); Phillips v.
State, 650 S.W.2d 396, 404 (Tex. Crim. App. 1983); Sinclair, 894 S.W.2d at 440. Of the three
interests, the most serious is the last, because the inability of a defendant adequately to prepare
his case skews the fairness of the entire system. Barker, 407 U.S. at 532. If witnesses die or
disappear during a delay, the prejudice is obvious; there is also prejudice if defense witnesses are
unable to recall accurately events of distant past, and loss of memory is not always reflected in
the record. Id.

 In this case there was no oppressive pretrial incarceration. Also, because appellant
was unaware of the pending charge before his arrest, he cannot have had, before that time, any
anxiety or concern about the pending charge. Therefore, the only prejudicial interest to be
seriously considered here is whether and to what extent the delay in prosecution impaired
appellant's ability to prepare his defense. The defendant has the initial burden to make a showing
of prejudice. Emery, 881 S.W.2d at 709; Harris v. State, 489 S.W.2d 303, 308 (Tex. Crim.
App. 1973).

 In his brief, appellant makes a general, conclusive claim that his defense was
impaired because he was deprived of the testimony of three former employees. When non-availability of witnesses is the basis of the alleged prejudice, a defendant must show that the
witnesses were unavailable at the time he was tried, their testimony was relevant to and admissible
in his defense, and that due diligence was exercised in an attempt to locate such witnesses at the
time of trial. McCarty v. State, 498 S.W.2d 212, 218 (Tex. Crim. App. 1973); Harris, 489
S.W.2d at 308.

 Debra Mazur, Carmen Flak, and Cynthia Patterson are the three former employees
whose testimony appellant contends was necessary for his defense. Appellant testified that due
to the lapse of time he could not locate these witnesses. Appellant could not establish the time
during which Mazur and Flak worked for him. He admitted that he was not sure they worked for
him while he was working with the complainant, but he thought it was near that time. However,
appellant was sure that Patterson (whose name he thought was Cynthia Thomas) worked for him
on the complainant's matter. He was also sure she would recognize the complainant and would
remember that the complainant, accompanied by a small child, came to the office on numerous
occasions.

 The complainant testified that at no time when he was in appellant's office were
there any women employees there. In rebuttal, the State produced and offered Patterson as a
witness. Appellant recognized Patterson as his former employee whose name he had thought was
Thomas. Patterson testified that she had been employed by appellant from January until October
1987. This was several months before the complainant first came to appellant's office, in
February 1988. Patterson testified that she did not recognize the complainant and that while she
was employed by appellant she had not done any work on the complainant's transaction. 
Although she did not know them, Patterson recognized the names of Mazur and Flak. She
"supposed" she recognized their names because they had been employed by appellant before she
had been.

 The record shows that appellant had not called either of the three former employees
to testify in the civil case. In light of the record, appellant has failed to show that the testimony
of these former employees would have aided his defense. Therefore, appellant's claim that the
delay of his trial resulted in the loss of beneficial testimony of these three witnesses is without
merit.

 Also, appellant contends that his defense was impaired because his memory was
"clearly dimmed," and that he had lost his "tax forms and employment records" and the "log,
notes and billing sheets" concerning the research and work he had done for the complainant. The
record includes approximately 250 pages of testimony given by appellant in his own defense, as
well as numerous exhibits used to support his testimony. Appellant testified in great detail
concerning the transaction and the advice he gave the complainant. He explained the research he
had done and told of the telephone calls which were documented. Appellant testified extensively
about his twenty years of experience, and his published articles appearing in trade magazines are
in the record. Appellant testified his usual fee was $125 per hour and that he had spent at least
150 hours on complainant's behalf. The testimony of a man who shared office space with
appellant during the time appellant was working on the complainant's transaction was offered by
appellant. That witness corroborated some of appellant's testimony.

 The evidence offered by appellant, if believed by the jury, showed a complete
defense to the offense charged. Unfortunately for appellant, the jury disbelieved his defense. The
record refutes appellant's claim that it was the trial delay that damaged his defense. When all of
the factors are considered and balanced, appellant has failed to show that the delay of his trial
deprived him of his constitutional right to a speedy trial. Appellant's point of error is overruled.


 The judgment of the trial court is affirmed.



 

 Carl E. F. Dally, Justice

Before Chief Justice Carroll, Justices Davis* and Dally**

Affirmed

Filed: August 28, 1996

Do Not Publish










* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).


** Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).




e the complainant and would
remember that the complainant, accompanied by a small child, came to the office on numerous
occasions.

 The complainant testified that at no time when he was in appellant's office were
there any women employees there. In rebuttal, the State produced and offered Patterson as a
witness. Appellant recognized Patterson as his former employee whose name he had thought was
Thomas. Patterson testified that she had been employed by appellant from January until October
1987. This was several months before the complainant first came to appellant's office, in
February 1988. Patterson testified that she did not recognize the complainant and that while she
was employed by appellant she had not done any work on the complainant's transaction. 
Although she did not know them, Patterson recognized the names of Mazur and Flak. She
"supposed" she recognized their names because they had been employed by appellant before she
had been.

 The record shows that appellant had not called either of the three former employees
to testify in the civil case. In light of the record, appellant has failed to show that the testimony
of these former employees would have aided his defense. Therefore, appellant's claim that the
delay of his trial resulted in the loss of beneficial testimony of these three witnesses is without
merit.

 Also, appellant contends that his defense was impaired because his memory was
"clearly dimmed," and that he had lost his "tax forms and employment records" and the "log,
notes and billing sheets" concerning the research and work he had done for the complainant. The
record includes approximately 250 pages of testimony given by appellant in his own defense, as
well as numerous exhibits used to support his testimony. Appellant testified in great detail
concerning the transaction and the advice he gave the complainant. He explained the research he
had done and told of the telephone calls which were documented. Appellant testified extensively
about his twenty years of experience, and his published articles appearing in trade magazines are
in the record. Appellant testified his usual fee was $125 per hour and that he had spent at least
150 hours on complainant's behalf. The testimony of a man who shared office space with
appellant during the time appellant was working on the complainant's transaction was offered by
appellant. That witness corroborated some of appellant's testimony.

 The evidence offered by appellant, if believed by the jury, showed a complete
defense to the offense charged. Unfortunately for appellant, the jury disbelieved his defense. The
record refutes appellant's claim that it was the trial delay that damaged his defense. When all of
the factors are considered and balanced, appellant has failed to show that the delay of his trial
deprived him of his constitutional right to a speedy trial. Appellant's point of error is overruled.


 The judgment of the trial court is affirmed.



 

 Carl E. F. Dally, Justice

Before Chief Justice Carroll, Justices Davis*