TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00015-CR







Barham Zandbiglari, Appellant



v.



The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY


NO. 462-291, HONORABLE WILFRED AGUILAR, JUDGE PRESIDING








 Appellant Barham Zandbiglari appeals from his conviction for the misdemeanor
offense of driving and operating a motor vehicle in a public place while intoxicated. See Tex.
Penal Code Ann. § 49.04 (West 1994 & Supp. 1999). The trial court assessed appellant's
punishment at confinement for 90 days and a fine of $1,500. The court probated $1,000 of the
fine, suspended the imposition of sentence, and placed appellant on community supervision for two
years. In four points of error, appellant asserts that the trial court erred in refusing to suppress
evidence that he alleges was unlawfully obtained in violation of his federal and state constitutional
rights and that he was denied his federal and state constitutional rights to a speedy trial. We will
overrule appellant's points of error and affirm the trial court's judgment.

 At the outset, we note that the record that has been presented for review is a
disorganized, muddled, partial record. This was an unexceptional misdemeanor driving while
intoxicated case. However, the appellate record includes the clerk's record of more than 200
pages and the reporter's record of a total of more than 400 pages contained in ten volumes. The
court reporter's certificate following the transcription in each of the ten volumes certifies that "the
foregoing [giving the number of pages] constitute a full, true and correct statement of all the facts
admitted during the hearing" and that "the said transcript contains all of the objections to the
admission or the exclusion of evidence, the rulings of the court thereon and the evidence in
connection therewith." However, we find that the certifications are incorrect. We have counted
at least 30 instances where the reporter's record shows "(objection and ruling omitted)" and at
least 12 instances where the reporter's record shows "(colloquy omitted)." Also preceding the
transcription in three volumes of the reporter's record is the notation "EXCERPT OF
PROCEEDINGS." Four volumes are labeled pretrial hearings I, II, III, & IV. Two more
volumes are labeled as pretrial hearings without volume numbers. Two volumes labeled "Trial
Before the Court" contain argument by counsel but no testimony or evidence. One volume labeled
"Trial Before the Court" contains 64 pages of testimony of the arresting officer but without
showing the witness was excused the transcription concludes with: "The Court: It is 5:00 o'clock. 
We are going to stop. (Whereupon proceedings adjourned)." This proceeding was shown to have
occurred on July 21, 1997. The record does not include a reporter's transcription of the trial on
its merits. Appellant's brief and reply brief are 89 pages in length and, the State's brief contains
35 pages. Both parties argue that the other party has mischaracterized the record. The parties
disagree on the historical facts and procedural history of the case and the law to be applied.

 In his third and fourth points of error, appellant contends that the trial court erred
in denying his motion to suppress evidence obtained in violation of his federal and state
constitutional rights. Appellant failed to point out in his brief where the record shows the ruling
of the trial court denying the motion. In its brief, the State says it was unable to find the trial
court's ruling on the motion to suppress and therefore, appellant has not preserved the matter for
appellate review. In his reply brief, appellant cited page numbers in both the clerk's record and
the reporter's record to show the trial court's ruling. However, in the portions of the record
appellant has designated there is no clear ruling. Appellant now argues that the trial court "ruled
. . . implicitly," denying the motion. From our independent inspection of the record, we find that
the parties have overlooked the trial court's ruling. The trial court's clear written order grants
appellant's motion to suppress evidence. (Clerk's record p. 26.) As we have noted, the extensive
record before us does not include a reporter's record showing the proceedings of the trial on the
merits. The trial court's judgment shows that appellant waived a jury trial and entered a plea of
not guilty before the court. The trial court found appellant guilty on September 10, 1997. There
is nothing in the record to show that the trial court changed its ruling granting the motion to
suppress evidence, and there is nothing in the record to show that any unlawfully obtained
evidence was admitted or used to convict appellant. Based on the record, appellant's points of
error three and four are without merit and are overruled.

 In his first and second points of error, appellant asserts that the trial court erred in
denying his motion to dismiss the prosecution because he was denied a speedy trial in violation
of his federal and state constitutional rights. See U.S. Const. amend. VI, XIV; Tex. Const. art.
I, § 10. Although appellant argues in conclusory terms that his state right to a speedy trial is
greater than his federal right, no authority supports this argument. The same right to a speedy
trial provided by the Sixth Amendment is assured by the Texas Constitution. See Emery v. State,
881 S.W.2d 702, 707 n.8 (Tex. Crim. App. 1994); Deeb v. State, 815 S.W.2d 692, 705 (Tex.
Crim. App. 1990); Hall v. State, 699 S.W.2d. 220, 221 (Tex. Crim. App. 1985); Floyd v. State,
959 S.W.2d 706, 709 (Tex. App.--Fort Worth 1998, no pet.). Also, though appellant has not
presented a separate point of error raising a Fifth Amendment due process claim, he commingles
a due process argument with his Sixth Amendment speedy trial argument in an apparent but
useless attempt to enhance his speedy trial claim. Although not properly raised for review, we
observe that a separate Fifth Amendment claim in the circumstances of this case would be without
merit.

 "[T]he Speedy Trial Clause has no application after [the prosecution] acting in good
faith, formally drops charges. Any undue delay after charges are dismissed, like any delay before
charges are filed, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause." 
United States v. MacDonald, 456 U.S. 1, 7 (1982); see also United States v. Lovasco, 431 U.S.
783, 788-90 (1977); Deeb v. State, 815 S.W.2d at 705.

 The federal constitutional right to a speedy trial applies to state prosecutions. 
Klopfer v. North Carolina, 386 U.S. 213, 222-23 (1967). The length of delay for purposes of
speedy trial analysis is generally measured from the time a defendant is arrested or formally
charged. Marion v. United States, 404 U.S. 307, 313 (1971); Harris v. State, 827 S.W.2d 949,
956 (Tex. Crim. App. 1992). To trigger a speedy trial analysis it must be shown that the interval
between accusation and trial has crossed the threshold dividing ordinary from "presumptively
prejudicial" delay. Doggett v. United States, 505 U.S. 647 (1992). When post-accusation delay
approaches one year most courts have held that it triggers the speedy trial inquiry. See id.;
Harris, 827 S.W.2d at 956.

 To determine whether the constitutional right to a speedy trial has been denied, the
Supreme Court devised an analysis that has since been universally followed. See Barker v. Wingo,
407 U.S. 514, 530 (1972). The analysis mandated has four factors: (1) the length of the delay,
(2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) any
prejudice resulting to defendant from the delay. Deeb v. State, 815 S.W.2d at 704; Sinclair v.
State, 894 S.W.2d. 437, 439 (Tex. App.--Austin 1995, no pet.). The application of these factors
to a given case is much more difficult than their statement. Evidence bearing on each factor must
be considered and weighed on a case by case basis. Then it is necessary to strike a balance
between the factors in the circumstances of the particular case. Barker, 407 U.S. at 530; Emery,
881 S.W.2d at 708. The review of the factors in the balancing test to determine speedy trial
claims necessarily involves fact determinations and legal conclusions. See Johnson v. State, 954
S.W.2d 770, 771 (Tex. Crim. App. 1997). "The balancing test as a whole, however, is a purely
legal question. Legal questions are reviewed de novo." Id.

 In making the Barker v. Wingo analysis, the length of the delay has two functions. 
First, it has the trigger function in determining whether the complete speedy trial analysis is
necessary. The delay in this case requires a full speedy trial analysis. The second function of the
length of delay is its bearing on the other factors and the extent to which the delay exceeds the
bare minimum considered "presumptively prejudicial." Doggett, 505 U.S. at 651-52. In
assessing the seriousness of the length of delay in its second function, the many circumstances of
each case must be considered. In Barker, although the delay was five years, the Supreme Court,
in balancing the factors, found that Barker was not denied a speedy trial. On the other hand, in
Doggett, in balancing the factors, the Supreme Court found that a delay of eight years contributed
to the denial of a speedy trial.

 On August 30, 1995, appellant was arrested and the next day released on bond. 
On September 20, an information was filed charging appellant with driving a motor vehicle in a
public place while intoxicated because of the use of a controlled substance. That information was
dismissed. On July 21, 1996, an information was filed charging appellant with driving and
operating a motor vehicle in a public place while intoxicated because of the use of alcohol. We
reject appellant's contention that the State filed the second information in order to gain tactical
advantage. The record shows that the State dismissed the first information and filed the second
information so that its allegations would conform to the proof it would offer. Therefore, in
applying the Barker balancing test to appellant's Sixth Amendment speedy trial claim we start with
the day on which the second information was filed, July 21, 1996. The time between the filing
of that information and the day of trial was a little more than 13 months, thus triggering the full
Barker speedy trial analysis.

 In considering the reasons for trial delay, different weight should be assigned to
different reasons. A deliberate attempt to delay the trial in order to hamper the defense would
weigh heavily against the State. See Barker, 407 U.S. at 531; Strunk v. United States, 412 U.S.
434, 435 (1973); Turner v. State, 545 S.W.2d 133, 137 (Tex. Crim. App. 1996). The analysis
of the reasons for the delay requires our consideration of the procedural history of the case. We
start with the filing of the new information on July 31, 1996. On October 18, 1996, appellant
filed several pretrial motions including a motion to quash the information, a motion for discovery,
and several motions to suppress evidence.

 At a November 7 hearing, appellant presented his motion to suppress and the
arresting officer testified. The trial court did not rule on the motion and recessed until December
9. On December 9, the trial court heard appellant's and the State's arguments on the motion to
suppress but withheld its ruling until the time of trial or until the court could review the testimony. 
Appellant also presented his motion to dismiss. Although appellant stated he wanted to present
evidence on his motion, he did not do so. Appellant's counsel argued for dismissal and also
expressed concern for appellant's immigration status. Both the State and appellant argued and
disagreed on the procedural history of the case. Without objection by appellant, the court recessed
the pretrial hearing.

 On March 6, 1997, appellant continued to argue his motion to dismiss and called
the prosecutor as a witness. The prosecutor's testimony and appellant's argument related to the
period of time prior to the filing of the second information. That argument and testimony
concerned Fifth Amendment due process issues and was not relevant to the Sixth Amendment
speedy trial issue. The hearing was recessed and reset for April 18. At the April 18 hearing,
appellant testified about his immigration status and his possible death if he were deported to Iran. 
Appellant requested a bench trial setting. On a June 13 hearing, appellant introduced some
exhibits and, it was revealed that appellant no longer faced deportation if he should be convicted
of the offense with which he had been charged. The trial judge, because of a back problem, stated
he was "in no condition" to hear the case that day and reset the case for trial on July 21. For the
first time, appellant objected to the resetting of the trial date.

 On July 21, the case did not go to trial, but the record fails to show why it did not. 
However, in a hearing on that day appellant continued to urge his pretrial arguments on the
admissibility of evidence and to reurge his motion to dismiss the prosecution. Some testimony of
the arresting officer was heard by the court. The court refused to suppress evidence of appellant's
refusal to take a breath test and overruled appellant's motion to dismiss. The judgment shows the
appellant's trial on the merits was heard September 10, 1997, and that the court found appellant,
who pled not guilty, guilty.

 From our review of the record, we find that the State neither deliberately nor
negligently caused trial delay. During the thirteen months between the filing of the information
and trial there were several hearings to consider appellant's motions. Although appellant urged
that the prosecution be dismissed and that he be acquitted, appellant did not demand a speedy trial. 
The record fails to show that the State should be charged with undue delay. It was the hearing of
appellant's pretrial motions that caused trial delay.

 We now consider whether appellant asserted his right to a speedy trial. A
defendant's assertion of his speedy trial right is entitled to great weight in determining whether
he was deprived of that right, but a defendant's failure to assert that right makes it difficult for him
to prove he was denied a speedy trial. See Barker, 407 U.S. at 531. On November 8, 1996,
appellant filed a motion to dismiss the prosecution, which is argumentative in nature, citing many
cases related to the denial of a speedy trial, due process, and due course of law. That motion does
not demand a speedy trial. The motion came to the court's attention and was denied by the court
with a written order on July 21, 1997 (Clerk's record p. 52.) Appellant has not directed our
attention to the record where a direct demand for a speedy trial was made. Our review of the
record makes it clear that appellant's prime objective was not to gain a speedy trial, but was
instead an attempt to have the charge against him dismissed. Although a motion to dismiss may
notify the State and the court of a speedy trial claim, a defendant's motivation in asking for
dismissal rather than for a speedy trial is relevant and may attenuate the strength of the speedy trial
claim. See Phillips v. State, 650 S.W.2d 396, 401 (Tex. Crim. App. 1983) (citing McCarty v.
State, 498 S.W.2d 212, 215-16 (Tex. Crim. App. 1993)); Crowder v. State, 812 S.W.2d 63, 67
(Tex. App.--Houston [14th Dist.] 1991, no pet.). The record fails to show that appellant
steadfastly demanded a speedy trial; this tips the balance against appellant.

 Prejudice, the fourth factor in the analysis, should be assessed in light of a
defendant's interests that the speedy trial right was designed to protect. See Barker, 407 U.S. at
532; Emery, 881 S.W.2d at 709. The Supreme Court has identified three such interests. They
are: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the
accused resulting from the pending charges, and (3) to limit the possibility that the defendant's
defense will be impaired. See Barker, 407 U.S. at 532; Smith v. Hooey, 393 U.S. 374, 378
(1969); Phillips v. State, 650 S.W.2d 396, 404 (Tex. Crim. App. 1983); Sinclair, 894 S.W.2d
at 440. Of the three interests, the most important is the last, because the inability of a defendant
adequately to prepare his case skews the fairness of the entire system. See Barker, 407 U.S. at
532. If witnesses die or disappear during a delay, the prejudice is obvious; there is also prejudice
if defense witnesses are unable to recall accurately events of the distant past, and loss of memory
is not always reflected in the record. See id. A defendant has the initial burden of showing that
he was prejudiced by trial delay. See Emery, 881 S.W.2d at 709; Harris v. State, 489 S.W.2d
303, 308 (Tex. Crim. App. 1973). Here, because there was at most only one day of incarceration,
appellant can have no claim of oppressive pretrial incarceration. He does contend that the
appearance bond requirements, to some extent, interfered with his liberty. 

 Appellant does not stress that trial delay impaired his defense. The record of a
hearing on June 13, 1997, shows that during the trial delay appellant obtained medical evidence
to explain why he appeared to be unsteady on his feet at the time he was arrested and given field
sobriety tests. Appellant stresses and strenuously argues that because of his immigration and
asylum status, the trial delay caused him demonstrable anxiety, emotional illness, and the
disruption of his life. The record is not entirely clear on appellant's immigration and asylum
status. However, as the State argues, there is no evidence that the trial delay did anything but
benefit appellant's immigration status. During the April 18, 1997, pretrial hearing, appellant, on
cross-examination, was asked: "The longer you stay here and stall this case, the better chance you
have of staying in the United States?" Appellant answered: "What do you mean by staying in the
United States?" The articulate appellant, a Pennsylvania State University graduate, hedged and
gave an evasive answer, but he did not deny that trial delay benefitted him by delaying the
possibility of his deportation. On June 13 at a subsequent hearing it was revealed that appellant
had been recently granted a permanent resident status in the United States. The record seems to
show that any trial delay was beneficial rather than detrimental to appellant's immigration status. 
In addition, the absence of a reporter's record of the trial on the merits makes it difficult or
impossible to appraise whether appellant was prejudiced by trial delay. We hold that appellant has
failed in his initial burden of showing he was prejudiced by trial delay.

 In summary, the balancing of the Barker factors weigh against appellant's claim that
he was denied a speedy trial. The record shows: (1) the reasons for the delay were perhaps more
attributable to appellant than to the State; (2) appellant did not demand or even seek a speedy trial;
and (3) the delay did not prejudice appellant's defense. Appellant's first and second points of
error are overruled.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Jones, Kidd and Dally*

Affirmed

Filed: March 11, 1999

Do Not Publish




* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).



hree such interests. They
are: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the
accused resulting from the pending charges, and (3) to limit the possibility that the defendant's
defense will be impaired. See Barker, 407 U.S. at 532; Smith v. Hooey, 393 U.S. 374, 378
(1969); Phillips v. State, 650 S.W.2d 396, 404 (Tex. Crim. App. 1983); Sinclair, 894 S.W.2d
at 440. Of the three interests, the most important is the last, because the inability of a defendant
adequately to prepare his case skews the fairness of the entire system. See Barker, 407 U.S. at
532. If witnesses die or disappear during a delay, the prejudice is obvious; there is also prejudice
if defense witnesses are unable to recall accurately events of the distant past, and loss of memory
is not always reflec