William Tyrone HARRIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 45209.

Court of Criminal Appeals of Texas.

Jan. 17, 1973.

James S. Moss, Mesquite, for appellant.

Henry Wade, Dist. Atty., Mike Mc-Collum, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for the offense of sale of whiskey in a wet area without a permit or license; a fine of $100.00 was assessed as punishment.

It is appellant's contention that the evidence is insufficient to support the conviction in that the state failed to prove (1) "that the premises in question was not covered by a license or permit issued by the Texas Alcoholic Beverage Commission or the Texas Liquor Control Board," and (2) the state failed to prove that the premises were a place where a permit could legally be secured to sell whiskey.

The record reflects that at about 1:30 A.M. on the morning of February 23, 1970, Quinton Vonner, an undercover agent for the Texas Alcoholic Beverage Commission, purchased a one-half pint bottle of O.F.C. brand whiskey from appellant who was working as the bartender in Wagoner's Diner in Dallas.

The evidence further shows that on March 17, 1969, Wagoner's Diner was issued a permit, number BG 245750, to sell beer and wine and on January 13, 1970, was issued a Retail Dealer on Premises Late Hour License number BL 290854.

Vonner testified that appellant had not been issued a liquor license or permit of any kind, but that he was authorized to sell beer and wine until 2:00 A.M. as an agent for Clarabelle Wagoner, the owner of Wagoner's Diner.

Joe Cox, an inspector with the enforcement division of the Texas Alcoholic Beverage Commission, testified that he had care, custody, and control of the records of the Alcoholic Beverage Commission in the Dallas region and that all approved wine, beer, and liquor licenses and permits for the Dallas area were filed in these records. Cox stated that he had searched the records and had determined that appellant did not have a permit or license of any kind to sell liquor on the date in question. Cox further testified that his search of the records revealed that Wagoner's Diner did possess a beer and wine permit and an after hours license to sell beer and wine, and that Wagoner's Diner could have obtained a permit to sell whiskey but that no such permit had been obtained.

Appellant argues that Inspector Cox testified that he had "care, custody

and control and management of the records of the *Liquor Commission*" instead of the *Texas Alcoholic Beverage Commission* or the *Texas Liquor Control Board.* A contextual reading of the record clearly reveals that when the prosecutor asked Cox if he had care, custody, and control of the records of the "Liquor Commission for the Dallas area," he was referring to the records of the Texas Alcoholic Beverage Commission, formerly named the Texas Liquor Control Board.

Concerning the question of whether the state sufficiently proved that the premises were a place where a permit could legally be secured to sell whiskey, we quote from the record a portion of Inspector Cox's testimony:

"Q. (By the prosecutor) Now, this area in which this offense occurred, 2725 Pennsylvania, at the Wagoner's Diner, was such premises in an area or place within Dallas County, Texas, and in which the sale of alcoholic beverages could be legally carried on with a permit or license?

A. Yes, they could be sold with the license.

Q. With the proper license?

A. Yes, sir, at that location.

Q. Now, Mr. Cox, I believe you stated this is in J.P. 1—the wet portion of J.P. 1.

A. Yes, sir, precinct 1.

\* \* \* \* \* \*

Q. Did the place where he worked have a license to sell liquor?

A. No, sir, not liquor. They only had a license to sell wine and beer.

Q. If the sale of that occurred, it would be in violation of the Texas Liquor laws?

A. Yes, sir, to sell liquor there, it would be in violation."

The evidence is sufficient to show that the premises were a place where a permit could legally be secured to sell whiskey. Moreover, no proof is required that the area is not dry if the offense is alleged to have been committed in a "wet" area. Fullylove v. State, 161 Tex.Cr.R. 629, 279 S.W.2d 357.

Appellant also contends the evidence is insufficient to support the conviction because the evidence shows that the premises in question *were* covered by a permit allowing the sale of alcoholic beverage containing alcohol in excess of four percent by weight. It is shown by the testimony of Inspector Cox that Wagoner's Diner was issued a permit to sell beer and wine on January 13, 1970. The "wine and beer retailer's permit" covering the premises in question was not introduced into evidence. Article 666–15, Sec. 17, Vernon's Ann.P.C., provides in part as follows:

"Wine and Beer Retailer's Permit. The Board or Administrator is authorized to issue Wine and Beer Retailer's Permits. The holders of such permits shall be authorized to sell for consumption on or off premises where sold, but not for resale, wine, beer and malt liquors containing alcohol in excess of one-half of one per cent (½ of 1%) by volume and not more than fourteen per cent (14%) of alcohol by volume . . ."

Article 666–3a, V.A.P.C., defines "Alcoholic Beverage" as follows:

" 'Alcoholic Beverage' shall mean alcohol and any beverage containing more than one-half of one percent (½ of 1%) of alcohol by volume which is capable of use for beverage purposes, either alone or when diluted."

The same Article defines "Liquor" as follows:

" 'Liquor' shall mean any alcoholic beverage containing alcohol in excess of four (4) per centum by weight, unless otherwise indicated. Proof that an alcoholic beverage is alcohol, spirits of wine,

whiskey, liquor, wine, brandy, gin, rum, ale, malt liquor, tequila, mescal, habanero, or barreteago, shall be prima-facie evidence that the same is liquor as herein defined."

Appellant's argument is that since he was authorized to sell wine, beer and malt liquors containing not more than 14% of alcohol by volume, and since wine, beer, malt liquor, as well as whiskey are defined as a liquor by Section 5 of Article 666–3a of V.A.P.C., he therefore was authorized to sell any alcoholic beverage, including whiskey, at least so long as it contained no more than 14% alcohol. He concludes that since the state's proof was only that the whiskey he sold was in excess of 4.4% alcohol by weight, it was insufficient to support the conviction.

Section (a) of Article 666–4, V.A.P.C. provides in part:

"It shall be unlawful for any person to . . . sell . . . any liquor in any wet area without first having procured a *permit of the class required for such privilege.*" (Emphasis added)

The question presented by this argument is whether a "Wine and Beer Retailer's Permit" authorizes the holder thereof to sell "whiskey" in excess of 4.4% but less than 14% alcohol by weight, if such is possible. We conclude that it does not.

■ The Liquor Control Act must be liberally construed, according to the expressed and implied intention of the Legislature. Texas Liquor Control Bd. v. Super Savings Stamp Co., Civ.App., 303 S.W.2d 536, ref. n.r.e.; Texas Liquor Control Board v. Floyd, Civ.App., 117 S.W.2d 530. In so doing, we find that there is a clear intent to distinguish between whiskey on the one hand and wine, beer, and malt liquor on the other.

■ *"Whiskey"* is included in the definition of "Distilled Spirits" *in Section (3)* of Article 666–3a, V.A.P.C.; wine, beer, and malt liquors are not. Although not specifically defined in the statute, whiskey has been defined by this court as an alcoholic liquid obtained by the distillation of the mash of fermented grain. Ramsey v. State, 132 Tex.Cr.R. 411, 104 S.W.2d 858, 859. *"Wine and vinous liquors"* is defined by Section (8) of Article 666–3a, V.A.P.C., as " . . . the product obtained from the alcoholic fermentation of juice of sound ripe grapes, fruits, or berries." *Malt Liquor* has been defined by this court in Claunch v. State, 32 Tex.Cr.R. 355, 199 S.W. 483, as "A general term for an alcoholic beverage produced merely by the fermentation of malt as opposed to those obtained by the distillation of malt." *Beer* has been defined as "an alcoholic beverage resulting from the fermentation of cereals or other starchy substances." United States v. Standard Brewery, D.C.Md., 260 F. 486, 487.

Thus the distinction is that whiskey is produced through distillation whereas wine, beer, and malt liquor are produced through the process of fermentation.

■ Therefore, a "Wine and Beer Retailer's Permit" does not authorize the holder thereof to sell "whiskey", regardless of the percent of alcohol per weight.

Finally, appellant contends that he was denied a speedy trial.

The record reflects that on June 11, 1970, appellant was incarcerated in the Texas Department of Corrections as a parole violator based on the charge of violation of the liquor law.[1] On November 24, 1970, appellant filed his motion requesting the court to grant him a speedy trial and that the trial court have him transferred back to Dallas County for that purpose. Appellant's counsel filed a motion for a

---

1. On February 16, 1962, appellant commenced serving a life sentence for murder in the Texas Department of Corrections.

He was paroled to Dallas County on August 9, 1968.

bench warrant requesting that he be transferred back to Dallas County prior to March 23, 1971 and appellant wrote a letter to the trial court, dated March 20, 1971, requesting that the trial court dismiss the charges against him for failure to grant him a speedy trial.

On March 22, 1971, the trial court issued a bench warrant to secure the presence of appellant for trial on May 19, 1971. Appellant filed a hand-written motion requesting that his case be dismissed because the denial of a speedy trial resulted in two of his witnesses being unavailable to testify. This motion was denied. The motion was renewed at the end of trial after appellant attempted to call two witnesses and the bailiff stated that the witnesses were not present.

■■■ An inquiry into a speedy trial claim necessitates consideration of at least these four factors: (1) length of delay, (2) the reason for the delay, (3) whether there has been a waiver by the accused, and (4) the prejudice to the accused. Due to the disposition required by the particular facts of this case, we will discuss only the fourth, the prejudice to the accused. Suffice it to say that the length of delay, 15 months, is not so long as to demand a per se determination of a violation of appellant's sixth amendment right; that appellant was not responsible for the delay; and that no waiver by appellant has been shown.

■■■ The Supreme Court of the United States identified three interests of defendants which should be considered in determining whether prejudice has resulted from a delay. They are, (1) to prevent

undue and oppressive incarceration prior to trial, (2) to minimize anxiety and concern accompanying public accusation, and (3) to limit the possibilities that long delay will impair the ability of the accused to defend himself. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. We are here concerned primarily with the third, that is whether appellant's ability to defend himself was prejudiced by the delay.[2]

■■■ Although a showing of "actual prejudice" is not required in Texas, the burden is on the accused to make some showing of prejudice which was caused by the delay of his trial. Courtney v. State, Tex.Cr.App., 472 S.W.2d 151.

■■■ Appellant contends that he was unable to find two witnesses because of the undue delay of his trial. Before such a contention will amount to "some showing of prejudice," the appellant must show that the witnesses are unavailable, that their testimony might be material and relevant to his case, and that he has exercised due diligence in his attempt to find them and produce them for trial.

■■■ The only evidence offered to support appellant's contention is the assertion of non-availability made by him in his letter to the trial court on March 20, 1971, and the same assertion in the motion to dismiss which he filed on the day of trial. Even assuming non-availability, appellant has not shown diligence in procuring the witnesses. The record does not indicate that the two missing witnesses were subpoenaed. See, Peoples v. State, Tex.Cr. App., 477 S.W.2d 889. Furthermore, there is no showing that the two witnesses were material or relevant to the case. The only

2. We recognize of course that the "evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense." United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468. However, the first two interests (undue and oppressive incarceration, and anxiety and concern accompanying public accusation) are best protected by a procedure afforded the accused prior to trial (writ of mandamus) which appellant had not in this case exhausted prior to his trial. See, Rodgers v. State, 448 S.W.2d 465 (Tex.Cr.App.1970) cert. denied, 400 U.S. 851, 91 S.Ct. 72, 27 L.Ed.2d 89 (1970); Ex parte Johnson, Tex.Cr.App., 475 S.W. 2d 916; Parker v. State, Tex.Cr.App., 397 S.W.2d 853; Robinson v. State, Tex.Cr. App., 470 S.W.2d 697.

indication that they were was appellant's assertion on direct examination that one witness knew Vonner, and that the other witness accompanied Vonner to Wagoner's Diner on the evening after this offense occurred.

The record does not show that appellant's ability to defend himself was prejudiced by the delay. See, Barker v. Wingo, supra; Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); Griffin v. State, 489 S.W.2d 290 (1973); Courtney v. State, supra.

No reversible error has been shown. The judgment is affirmed.