IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00021-CR

 

James Bradburry,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 278th District Court

Walker County, Texas

Trial Court No. 22901

 



MEMORANDUM  Opinion










 

            Appellant James Bradburry was convicted
of the offense of Aggravated Assault with a Deadly Weapon and sentenced to
twenty-five (25) years confinement in the Texas Department of Criminal
Justice-Institutional Division.  Tex.
Pen. Code Ann. § 22.02 (Vernon Supp. 2007).  Bradburry’s sole issue on
appeal is the trial court’s denial of his motion to dismiss his indictment for
the denial of his right to a speedy trial.  We affirm.

The Sixth Amendment to the United States
Constitution guarantees an accused the right to a speedy trial.  Cantu v.
State, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). (citing Zamorano v.
State, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002)).  Supreme Court precedent
requires state courts to analyze federal constitutional speedy-trial claims
"on an ad hoc basis" by weighing and then balancing the four Barker
v. Wingo factors: 1) length of the delay, 2) reason for the delay, 3)
assertion of the right, and 4) prejudice to the accused.  Barker v. Wingo,
407 U. S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).  While the State has
the burden of justifying the length of delay, the defendant has the burden of
proving the assertion of the right and showing prejudice.  Id.  The four
factors are related and must be considered together along with any other
relevant circumstances.  Id. at 281.  Courts must apply the Barker
balancing test with common sense and sensitivity to ensure that charges are
dismissed only when the evidence shows that a defendant's actual and asserted
interest in a speedy trial has been infringed.  Id.

Standard of Review

"In reviewing the trial court's ruling on
appellant's federal Constitutional speedy trial claim, we apply a bifurcated
standard of review: an abuse of discretion standard for the factual components,
and a de novo standard for the legal components.”  Zamorano, 84 S.W.3d
at 648.  Under the abuse of discretion standard, appellate courts defer not
only to a trial judge's resolution of disputed facts, but also to his right to
draw reasonable inferences from those facts.  Cantu, 253 S.W.3d at 282.  The
trial judge may completely disregard a witness's testimony, based on
credibility and demeanor evaluations, even if that testimony is uncontroverted.
 Id.  And all of the evidence must be viewed in the light most favorable
to his ultimate ruling.  Id.

As a general rule, an appellate court reviewing a trial
court's ruling on a motion to dismiss for want of a speedy trial must do so in
light of the arguments, information, and evidence that was available to the trial
court at the time it ruled.  Dragoo v. State, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).

The Hearing

Bradburry was indicted by the grand jury on August
16, 2005 for an offense that occurred on or about January 19, 2005.  On June 8,
2007, Bradburry filed his first motion for speedy trial, requesting a trial date
no later than August 31, 2007.  There was no request for a hearing on this
motion.  On September 11, 2007, Bradburry filed a motion to dismiss the
indictment for failure to grant him a speedy trial.  On October 5, 2007, the
trial court had a hearing on Bradburry’s motion to dismiss the indictment.  The
trial court denied Bradburry’s motion, but stated its intent to set Bradburry’s
case for trial in December of 2007.  Bradburry then filed a request for trial
setting in December of 2007.  Bradburry’s trial by jury actually commenced on
November 5, 2007.  

Length of the Delay

The length of the delay is measured from the time
the defendant is arrested or formally accused.  Dragoo, 96 S.W.3d at
313.  This factor is, to some extent, a triggering mechanism, so that a speedy
trial claim will not even be heard until passage of a period of time that is,
on its face, unreasonable under the circumstances.  Id. (citing Doggett
v. United States, 505 U. S. 647, 651-652, 120 L. Ed. 2d 520, 112 S. Ct.
2686 (1992); Barker v. Wingo, 407 U.S. at 530).  In general, a delay
approaching one year is unreasonable enough to trigger the Barker
inquiry.  Dragoo, 96 S.W.3d at 313.

It is apparent from the record that there is no
dispute that the case had been pending for over two years.  In fact, at the
hearing on the motion to dismiss, the State’s attorney references being ready
to “take the  hit” for the case being over two years old.

A delay of over two years is long enough to
trigger the Barker inquiry and weighs against the State.

Reason for the Delay

            When a court assesses the second Barker
factor, "different weights should be assigned to different reasons"
for the delay.  Dragoo, 96 S.W.3d at 316.  A valid reason for the delay
should not be weighed against the government at all.  State v. Munoz,
991 S.W.2d 818, 822 (Tex. Crim. App. 1999) (citing Barker v. Wingo, 407 U.S. at 531) (valid reason for the delay "should serve to justify appropriate
delay")).  Delay which is attributable in whole or in part to the
defendant may even constitute a waiver of a speedy trial claim.  Id. (citing Dickey v. Florida, 398 U.S. 30, 90 S. Ct. 1564, 26 L. Ed. 2d 26,
38 (1970) (Brennan, J., concurring) (defendant may be "disentitled to the speedy-trial
safeguard in the case of a delay for which he has, or shares,
responsibility")).  While it is not the sole responsibility of the
defendant to protect his right to a speedy trial, the defendant has some
affirmative obligation to assert his right to a speedy trial.  Barker v.
Wingo, 407 U.S. at 527).

            The only reasons given for the delay
by the State were that the trial court’s docket as a traveling judge makes it
difficult to get a setting and that the prosecutor had been unavailable for a
period of approximately four months in early 2007.  A crowded court docket is
not a valid reason for delay, and must be weighted against the State, although
not heavily.  Shaw, 117 S.W.3d at 890.  

There are three docket entries in the clerk’s
record during the relevant time period.  On November 4, 2005, it appears but is
not clear from the record that Bradburry was arraigned and pled not guilty. 
The other two entries are dated March 3, 2006, and December 1, 2006, but the
only annotation is “Case reset.”  The next setting was the hearing on
Bradburry’s motion to dismiss.  The record is silent as to the reasons for the
resets or whether they were agreed resets.

It is the State’s burden to justify the length of
the delay, which it did not do.  Thus, this factor weighs against the State,
although not heavily.  Shaw, 117 S.W.3d at 889-890.

Assertion of the Right

            A defendant has the responsibility to
assert his right to a speedy trial.  Cantu, 253 S.W.3d at 283.  The lack
of a timely demand for a speedy trial strongly indicates that a defendant did
not really want a speedy trial and that he was not prejudiced by the lack of
one.  Dragoo, 96 S.W.3d at 316.  Inaction weighs more heavily against a
violation the longer the delay becomes.  Id.  Filing for a dismissal
instead of a speedy trial will generally weaken a speedy-trial claim because it
shows a desire to have no trial instead of a speedy one.  Cantu, 253
S.W.3d at 283.

            Bradburry filed a motion for speedy
trial on June 8, 2007, which requested a trial setting no later than August 31,
2007, approximately within two and a half months of the filing date.  There is
no reference in the record as to whether this request was brought to the trial
court’s attention.  The motion itself has no request for a hearing.  Bradburry
then filed his motion to dismiss the indictment based on the denial of a speedy
trial on September 11, 2007, which was set for hearing on October 5, 2007.  

As evidence of his readiness for trial, Bradburry
points to his boilerplate pretrial motions filed as early as December 20,
2005.  What these motions also demonstrate, however, is that Bradburry was
represented by counsel since at least that date, and there is no question
raised as to the competency of his counsel.  

The short length of time specified in Bradburry’s
motion to set Bradburry’s case for trial was unreasonable.  Additionally,
Bradburry’s failure to request a hearing on his speedy trial motion or to
otherwise demonstrate that it was brought to the trial court’s attention
created a situation where Bradburry could quietly sit back and await the
passage of the deadline he set prior to demanding a dismissal.  

It is also important to note that once the motion
to dismiss was brought to the trial court’s attention, the hearing was held in
less than a month after the motion was filed, and Bradburry’s trial commenced
less than two months after the filing of the motion to dismiss and
approximately one month after the hearing on the motion to dismiss.  In view of
the delay in which it is reasonable for the trial court to infer that Bradburry
quietly acquiesced, this factor weighs against Bradburry.  Dragoo, 96
S.W.3d at 314-315.

Prejudice to the Accused

            When a court assesses the final Barker
factor, it must do so in light of the interests of defendants the speedy trial
right was designed to protect: (1) to prevent oppressive pretrial
incarceration; (2) to minimize the accused's anxiety and concern; and (3) to
limit the possibility that the accused's defense will be impaired.  Barker
v. Wingo, 407 U.S. at 532; Dragoo, 96 S.W.3d at 316. 

Bradburry was serving a life sentence in prison at
the time of the offense in the instant case.  Without more, the trial court
could reasonably infer that there was no oppressive pretrial incarceration. 
Bradburry put forth no evidence of any at the hearing on the motion to
dismiss.  This sub-factor weighs against Bradburry.

Nor did Bradburry present any evidence of anxiety
or concern regarding his impending trial; therefore, this sub-factor weighs
against him.

At the hearing on the motion to dismiss, Bradburry
presented one witness who was the investigator for his case.  That investigator
presented documents of nine potential witnesses who had been subsequently
discharged from incarceration and whose whereabouts were at that time unknown. 
These individuals were persons who were believed to have witnessed the
offense.  The dates of release were varied, with at least five of them being
from 2006 to 2007.  However, the investigator did not begin his search for
these witnesses until September of 2007, after his arbitrary trial deadline and
less than one month before the hearing on the motion to dismiss.  There was
also no testimony as to how these individuals would aid in Bradburry’s
defense.  

In order to demonstrate prejudice,
Bradburry must show not only that the witnesses were unavailable, but also that
their testimony might be material and relevant to his case, and that he
exercised due diligence in his attempt to find them and produce them for
trial.  Harris v. State, 489 S.W. 2d 303, 308 (Tex. Crim. App. 1973); Phipps
v. State, 630 S.W.2d 942, 947 (Tex. Crim. App. 1982).  Even if it was
conceded that the testimony of the missing witnesses was material to the
instant case, we do not believe Bradburry has met his burden to establish
diligence in procuring the witnesses.  The record fails to indicate that the
search for the witnesses was undertaken until after Bradburry’s motion to
dismiss was filed in September of 2007.  See Harris, 489 S.W. 2d
at 308; Peoples v. State, 477 S.W.2d 889, 889 (Tex. Crim. App. 1972).  This delay in investigating the case to attempt to
locate any witnesses is in large part attributable to Bradburry.  This factor
weighs against Bradburry.

Bradburry complains for the first time on appeal
that he was prejudiced by the lack of recollection by the State’s witnesses. 
Bradburry has not preserved this error as required by Texas Rule of Appellate
Procedure 33.1(a)(1)(A).  Tex. R. App. P. 33.1(a)(1)(A).  At the time
of the dismissal hearing, no evidence was presented nor was argument made as to
the lack of recollection of any witnesses or any potential witnesses.  Any
evidence regarding the witnesses’ ability to recall the facts was not before
the trial court before it rendered its decision on the motion to dismiss.  Dragoo,
96 S.W.3d at 313; Shaw, 117 S.W.3d at 889.  The trial court had informed
Bradburry that the issue of the dismissal could be brought up again during the
trial.  Dismissal for a speedy trial violation was not raised again during
Bradburry’s jury trial.  We therefore cannot consider any evidence presented
during the trial in evaluating the prejudice, if any, to Bradburry by trial
witnesses who testified regarding their lack of recollection of certain facts
of the incident.

Balancing
            In balancing the four factors, we find that the delay was excessive
and the State did not present an adequate explanation for the delay.  While it
appears from the record that no trial setting had been made for over six months
when Bradburry filed his motion for a speedy trial, Bradburry delayed in demanding
a speedy trial.  He then did not request a hearing for the trial court to
consider his motion for speedy trial, which also contributed to the delay.  The
prejudice to Bradburry, evaluating only the evidence before the trial court at
the time of the dismissal hearing was weakened significantly by Bradburry’s
lack of investigation for more than two years after his indictment. 

Balancing the four Barker factors, we hold
that they weigh against Bradburry.  The trial court properly overruled
Bradburry’s motion to dismiss for denial of a speedy trial. 

We overrule Bradburry’s sole issue and affirm the
judgment of the trial court.

 

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before Chief Justice
Gray,

            Justice
Reyna, and

            Justice Davis

Affirmed

Opinion delivered and
filed July 1, 2009

Do not publish

[CRPM]