

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00137-CR

_____

BILLY WAYNE SPEIGHTS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 09F0006-102

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss
Concurring Opinion by Justice Carter

# MEMORANDUM OPINION

For a variety of reasons, Billy Wayne Speights' trial—on three charges, aggravated sexual assault, indecency with a child by sexual contact, and indecency with a child by exposure—was delayed, until more than three and one-half years after his arrest. Speights appeals his convictions and sentences[1] asserting that he was denied a speedy trial on all three charges and that the third charge, indecency by exposure, subjected him to double jeopardy. Because (1) Speights' right to a speedy trial was not violated and (2) the exposure charge subjected Speights to double jeopardy, we reverse and render an acquittal on the charge of indecency with a child by exposure, but affirm the remainder of the convictions and sentences.

*(1)     Speights' Right to a Speedy Trial Was Not Violated*

The Sixth Amendment to the United States Constitution guarantees the right to a speedy trial. This right protects the accused from anxiety and concern that accompanies a public accusation, seeks to avoid impairment to a defense, and assures freedom from oppressive pretrial incarceration. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (citing *Barker v. Wingo*, 407 U.S. 514, 532 (1972)).

The right to a speedy trial cannot be quantified in days or months. *Barker v. Wingo*, 407 U.S. 514, 523 (1972). Thus, Texas courts "analyze federal constitutional speedy-trial claims 'on an ad hoc basis' by weighing and then balancing the *Barker v. Wingo* factors." *Cantu*, 253 S.W.3d at 280. These factors include the (a) length of the delay, (b) reason for the delay,

---

[1]A jury convicted Speights of all three offenses. He was sentenced to sixty years' imprisonment for the aggravated sexual assault, twenty for indecency by contact, and ten for indecency by exposure.

(c) assertion of the right, and (d) prejudice to the accused. *Barker*, 407 U.S. at 530; *Cantu*, 253 S.W.3d at 280. "[T]he greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Cantu*, 253 S.W.3d at 280–81. No one factor is determinative, and all factors must be considered together along with relevant circumstances on a case-by-case basis. *Id.* at 281.

"In reviewing the trial court's ruling on [an accused's] federal constitutional speedy trial claim, we apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a de novo standard for the legal components." *Id.* at 282 (quoting *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002)). Review of the *Barker* factors involves both legal and factual determinations, but "[t]he balancing test as a whole . . . is a purely legal question." *Id.* (quoting *Zamorano*, 84 S.W.3d at 648 n.19). Under an abuse-of-discretion standard, we defer to the trial judge's resolution of facts and reasonable inferences drawn therefrom, and we review the evidence in a light most favorable to the ruling. *Id.*

*(a) Length of the Delay*

The *Barker* test is triggered by a delay that is unreasonable enough to be considered presumptively prejudicial. *Id.* at 281. In this case, Speights was arrested November 7, 2008, the indictment was filed February 3, 2009, and the trial was conducted starting July 17, 2012. As conceded by the State, this delay is presumptively prejudicial. *See id.* (citing *Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. 1983); *Doggett v. United States*, 505 U.S. 647, 651–52 n.1 (1992) (delays approaching one year presumptively prejudicial)).

This factor weighs toward a finding that Speights was denied a speedy trial.

*(b)    Reason for the Delay*

On February 5, 2009, the public defender's office was appointed to represent Speights, and his case was originally set for trial in September 2009, less than one year after his arrest.[2] For reasons not included in the record, the trial did not occur. At the hearing on the motion for speedy trial, the State argued that the public defender handling Speights' case left the public defender's office, causing another attorney to be assigned to the case. The State represented that the new defense counsel did not pursue a prompt trial because the parties thought a polygraph examination might dispose of the case, or at least help determine what should be done with the case. During the polygraph examination, however, it was discovered that Speights was "under medication particularly for blood pressure or a heart condition that made a true test impossible." The State decided to "wait and see if Mr. Speights' medical condition would improve to the point where a test could be done." The State told the court that the inconclusive test was "very recent[ly]" conducted, although the date of the test could not be produced. The State argued that the delay was "not the State's fault, but rather the process of an election and the process of a polygraph," and pointed out that the defense had "not moved for a trial setting."

Then another complication arose. The district attorney overseeing the prosecution of Speights' case became the elected district judge. The trial court noted that "this case was arraigned on March 5, 2009," and took "judicial notice of the fact that Bobby Lockhart was the

---

[2]After the March 5, 2009, arraignment, the court's docket sheet indicates that pretrial hearings were reset May 14, July 1, and August 20, 2009. There is no motion or letter objecting to the matter being reset by either the State or Speights.

sitting criminal district attorney here in Bowie County at that time." The court also took "judicial notice of the fact that Mr. Lockhart was elected to serve as judge of the 102nd, took office on January 1, 2011, and is still seated in that position." Prosecutor James Elliot advised the court,

> That caused this case to be shifted into—I think first we had a visiting judge, and then we ran out of money, so the case had to once again be shifted from Judge John Miller to its present location in this court, which is in the 202nd District Court. That administratively has accounted for much delay because we have had to, in essence, share the docket with the current cases pending in the 202.

The trial court recalled,

> At that point in time, the courts requested that a visiting judge be appointed. The administrative judge, Judge John Ovard of the First Administrative District, appointed Judge Miller, after much discussion, to continue with the docket with the understanding that the administrative district had very limited funds available. At that point in time, we also had a change of county judges. The new county judge that took office at the same time that Judge Lockhart did was unable to make a determination whether or not Judge Miller would be able to continue to sit as a visiting judge and whether Bowie County would be able to pick up those funds. At that point in time, in April, or actually in March, it became apparent to the county and the county judge at that time that Bowie County did not have the funds. We had a couple of capital murder cases that were going to be tried; the Delma Banks case, as well as shortly thereafter a deputy was killed State and Tucker Strickland was arrested on that with the potential for capital murder. Based on those circumstances the county decided to approach the district judges and myself, as the administrative judge of this county, about one of the sitting district judges picking up . . . the docket because the county did not have the funds. At that point in time, I worked out an agreement with Judge Lockhart about picking up some civil cases, but I took over the 102nd criminal docket that was pending that Judge Lockhart was disqualified from. As Mr. Elliott has indicated in his comments, and as the record will reflect, I have a large 202nd criminal docket as well as a civil docket, and we have been setting cases and trying to resolve those cases. We have resolved a number of those cases. However, there are still some pending, including this case. This Court has worked with the district attorney's office about finding dates for cases. We have tried a number of individuals that have been in jail charged with serious offenses, and we are proceeding with that and we are here. Part of the delay is due to the

5

fact that this Court is now responsible for the jurisdiction of the 102nd criminal cases as well as the entire 202nd cases, which takes up half of the cases filed in Bowie County. So that is part of the delay indicated for it and accounts for some of the delay that has occurred since 2011.

While the "burden of excusing the delay rests with the *State*, . . . different weights should be assigned to different reasons" when analyzing this prong of the *Barker* test. *Phillips*, 650 S.W.2d at 400; *see Barker*, 407 U.S. at 531. Deliberate attempts to delay trial in order to hamper a defense are weighed heavily against the State.[3] *Barker*, 407 U.S. at 531. More neutral reasons, such as negligence or overcrowded courts are weighed less heavily against the State. *Id.*; *Zamorano*, 84 S.W.3d at 649–50; *State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999). A valid reason for delay "should serve to justify appropriate delay." *Id.* Delay which is attributable in whole or in part to the defendant is heavily weighed against the defendant and can constitute waiver of a speedy-trial claim.[4] *Munoz*, 991 S.W.2d at 822 (citing *Dickey v. Florida*, 398 U.S. 30 (1970)).

Although this case was set for trial in September 2009 that never occurred, the record fails to demonstrate any deliberate attempts by the State to delay or hamper the defense. There were neutral reasons which attributed to this delay. After the district attorney became the district judge, a host of reasons involving lack of funds and the trial court's docket contributed to the delay. These neutral reasons are "'weighed [against the government] less heavily.'" *Bosworth v. State*, No. 06-12-00058-CR, 2013 WL 563321, at *2 (Tex. App.—Texarkana Feb. 15, 2013, pet. ref'd) (quoting *Barker*, 407 U.S. at 531).

---

[3]Defense counsel clarified, "[W]e're not alleging bad faith here."

[4]The complexity of the charged offense should also be considered; "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531.

On the other hand, delay attributed to Speights is weighed heavily against him. *Munoz*, 991 S.W.2d at 822. A February 17, 2011, pretrial hearing was reset without explanation in the record, but during a December 5, 2011, setting, Speights' counsel asked if the court could "tentatively set" the matter for trial eight months later on July 17, 2012. The trial court also heard that part of the delay was due to another public defender being assigned to the case who wanted to conduct polygraph examinations with the hope that a positive result could benefit Speights. Thus, the parties decided to wait until Speights' medical condition improved before the second polygraph examination. Speight's brief asserts that the July 17, 2012, trial setting was to provide time to see if a good polygraph examination could resolve the case.

While there is every indication that neutral reasons played a role in the delay of trial, we find that Speights' desire to take a polygraph examination in the hopes that it would exonerate him and his request to delay the trial for over seven months also played a role in the delay. Overall, we weigh this factor slightly against Speights.

*(c)* *Assertion of the Right*

Next, Speights had the responsibility to timely assert his right to a speedy trial. *Cantu*, 253 S.W.3d at 282 (citing *Barker*, 407 U.S. at 527–28). "The constitutional right is that of a speedy trial, not dismissal of the charges." *Id.* at 281.

Speights' first motion asserting a speedy-trial right was filed August 11, 2010. The motion alleged that Speights had always announced that he was ready for trial and had never requested a continuance (although the record shows that pretrial was reset four times without objection). This motion asked for a speedy-trial hearing and did not request a dismissal.

7

However, no hearing was held on this motion, and there is nothing demonstrating that it was brought to the trial court's attention.

Speedy-trial claims must be preserved. *Henson v. State*, No. PD-1249-12, 2013 WL 4820220 (Tex. Crim. App. Sept. 11, 2013); *see Robinson v. State*, 470 S.W.2d 697, 699 (Tex. Crim. App. 1971). The court explained,

> One notable difference between [other Constitutional rights] and the right to a speedy trial is that the other rights do not have so great an incentive for the defendant to sleep on his rights. As has been discussed, the deprivation of a speedy trial often can benefit the appellant. Without a requirement of preservation, a defendant would have great incentive not to insist on a speedy trial and then to argue for the first time on appeal that the prosecution should be dismissed because of delay. The requirement of preservation forces the defendant to pick one strategy. He can either fail to insist on a speedy trial and possibly reap benefits caused by delay, or he can insist on a prompt trial, and if it is not granted, argue for a dismissal. He may not do both.

*Id.* at *3.

> Texas Rule of Appellate Procedure 33.1 states,
>
> As a prerequisite to presenting a complaint for appellate review, the record must show that:
>
> . . . .
>
> (2) the trial court:
>
> (A) ruled on the request, objection, or motion, either expressly or implicitly; or
>
> (B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

TEX. R. APP. P. 33.1(a)(2).

In issuing its ruling in *Henson*, the Texas Court of Criminal Appeals wrote, "Our conclusion is strengthened by the fact that every court of appeals to consider the issue has upheld a preservation requirement," and then cited to one opinion from each of our sister courts to support the statement. Tellingly, *Henson* used *Guevara*, issued from the Fourteenth Court of Appeals, as its example. That case held that "[a] motion [for speedy trial] must be 'presented' to the trial court to preserve a complaint for appellate review and presentment means more than a mere filing." *Guevara v. State*, 985 S.W.2d 590, (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *see Crocker v. State*, No. 01-11-00095-CR, 2013 WL 269122, at *2 (Tex. App.—Houston [1st Dist.] Jan. 24, 2013, pet. ref'd). *Guevara* further explained that "[t]he movant must make the trial judge aware of the motion by calling the judge's attention to it in open court and requesting a ruling thereon." *Id.*; *see also Wright v. State*, No. 05-09-01527-CR, 2011 WL 5178298, at *1 (Tex. App.—Dallas Nov. 2, 2011, no pet.) (not designated for publication) (citing *Lamar v. State*, No. 05-04-00741-CR, 2005 WL 1871024 (Tex. App.—Dallas Aug. 9, 2005, pet. dism'd) (not designated for publication) (right to speedy trial not raised unless brought to court's attention)); *Wrighter v. State*, No. 08-99-00109-CR, 2003 WL 318527, at *2 (Tex. App.—El Paso Feb. 13, 2003, pet. ref'd) (not designated for publication);[5] *Leal v. State*, 626 S.W.2d 866, 867 (Tex. App.—Corpus Christi 1981, no pet.); *see also Robinson*, 470 S.W.2d at 699.

Of course, unlike *Henson* and *Guevara*, Speights reasserted his right and secured a ruling just before trial. The matter is preserved for our review, but, in our view, the delay in

---

[5]Although these unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

presentment is relevant in determining this *Barker* factor. In weighing the degree to which Speights asserted the right, we may consider the "frequency and force of [the defendant's] objections" to the delay. *Barker*, 407 U.S. at 529; *see Wrighter*, 2003 WL 318527, at \*2 (defendant's inaction between filing motion and trial); s*ee also Turner v. Estelle*, 515 F.2d 853, 857–58 (5th Cir. [Tex.] 1975) (consider timing of defendant's assertion of right to immediate trial); *Dragoo v. State*, 96 S.W.3d 308, 314–15 (Tex. Crim. App. 2003) (defendant's "quiet acquiescence" in delay counts against speedy-trial claim); *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992), *cert. denied*, 506 U.S. 942 (1992) (deferred or absence of request for prompt trial counts against claim, even if motion to dismiss filed); *Orosco v. State*, 827 S.W.2d 575, 577 (Tex. App.—Fort Worth 1992, pet. ref'd), *cert. denied*, 506 U.S. 960 (1992) (failure to request hearing until eve of trial weakens speedy-trial claim). It was not until July 17, 2012, the day of trial, that Speights filed a "Motion to Quash and Dismiss Indictment for Violation of Defendant's Right to a Speedy Trial." This second motion sought a dismissal of the indictment, "or in the alternative," a hearing on the speedy-trial issue. "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Cantu*, 253 S.W.3d at 283. Further, the record establishes that Speights was released on making a personal recognizance bond a few days after his first motion for speedy trial. His failure to bring the first motion to the court's attention suggests that his intent in filing it was to be released from jail. For the first time, on the day of trial, the speedy-trial issue was called to the court's attention, and a hearing was held.

10

"[T]he defendant's assertion of his speedy-trial right (or his failure to assert it) is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.* Though Speights' first speedy-trial motion was filed August 11, 2010, the record is very thin on any indication that Speights took any action to pursue the first motion until the day of trial, almost two years after the first motion was filed. Only then was the speedy-trial issue brought to the court's attention by way of a motion to dismiss. Failure to make a request for a speedy trial "supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Id.* at 283 (quoting *Barker*, 407 U.S. at 534–36). Given the current precedent, we must find that the delay in pursuing his first speedy-trial motion weighs against Speights. *See Dragoo*, 96 S.W.3d at 314–15.

*(d)    Prejudice to the Accused*

Prejudice occasioned by the delay in proceeding to trial is assessed in the light of the three interests the right to a speedy trial was designed to protect: (1) freedom from oppressive pretrial incarceration, (2) mitigation of the anxiety and concern on the part of the accused that accompanies a public accusation, and (3) avoidance of impairment to the defense of the charges. *Barker*, 407 U.S. at 532. "[T]he burden is on the accused to make some showing of prejudice which was caused by the delay of his trial." *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973).

11

Speights was incarcerated for a total period of 652 days.[6] After his release, he was placed into an alternative incarceration program. In *Munoz*, the Texas Court of Criminal Appeals found "dispositive" of the oppressive pretrial incarceration subfactor the fact that Munoz "was incarcerated during the entire seventeen-month delay." *Murray*, 991 S.W.2d at 828. Likewise, this record establishes that Speights was subjected to oppressive pretrial incarceration.

Speights filed an affidavit stating that he had "been living under a cloud of suspicion of being a pedophile or a child molester for almost four years," causing him "great anxiety," and impeding his ability "to find work." The trial court failed to make findings relating to Speights' anxiety and concern. Given the duration of the pretrial incarceration and house arrest, and "in the absence of evidence to the contrary, we find that the appellant's anxiety and concern were not minimized." *Webb v. State*, 36 S.W.3d 164, 174 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (uncontradicted letters to court claiming anxiety and duress, sufficient to show prejudice).

Limiting the impairment of a defense is the most serious interest protected by the right to a speedy trial. *Barker*, 407 U.S. at 531. If witnesses become unavailable during a delay or are unable to recall events, prejudice is obvious. *Id.* at 532. In an affidavit filed with the second motion and at the hearing, Speights claimed that "three witnesses are now unavailable either due to the witness leaving the jurisdiction or residing in places unknown." These witnesses included:

---

[6]An application for writ of habeas corpus and motion for reasonable bond was filed August 19, 2010. The motion was granted on the following day, a personal recognizance bond was set at $10,000.00 and made, and Speights was released.

the victim's biological mother (Mother),[7] who allegedly was asleep in the bed with the victim at a time when Speights removed the victim from the bed; the "maternal grandmother of the complaining witness" who lived with the victim during the alleged abuse; and the Mother's former girlfriend who was expected to testify that Mother "filed false charges against her for sexually assaulting the alleged victim's sister" after the termination of their relationship.

"[C]onsideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 655. Speights had the burden, however, to make a prima facie showing of prejudice. *Dokter v. State*, 281 S.W.3d 152, 159 (Tex. App.—Texarkana 2009, no pet.). A defendant must offer more than mere speculation of faded memories to show prejudice. *Munoz*, 991 S.W.2d at 829. The trial court explained that it had "no testimony before it other than just the affidavit filed by Mr. Speights as it relates to what [these witnesses] could possibly have testified to. . . . It's all speculation on his part about what they could possibly testify to other than being in the house."[8] "In assessing the evidence at a speedy-trial hearing [or in this case, evidence presented in an affidavit], the trial judge may completely disregard a witness's

---

[7]Speights also suggested that the mother was the original outcry witness. However, the record establishes that although the child "tried to tell his mother . . . she told him to go on." The record fails to indicate what the child actually said to his mother. The Texas Court of Criminal Appeals has interpreted Article 38.072 of the Texas Code of Criminal Procedure to require that the previous statement be one which "in some discernible manner describes the alleged offense." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). It must be "more than words which give a general allusion that something in the area of child abuse was going . . . .The statute demands more than a general allusion of sexual abuse." *Id.*; *see also Thomas v. State*, 1 S.W.3d 138, 140–41 (Tex. App.—Texarkana 1999, pet. ref'd).

[8]The child's therapist, Karrah Dickeson, testified that, if the case had gone to trial in 2010, before her sessions with him, it would have been difficult for him to testify. Speights argues that this testimony suggested that the child "would have (or would likely have) been unable to testify because he required post-traumatic cognitive behavioral therapy." We characterize this argument as speculation.

13

testimony . . . , even if that testimony is uncontroverted." *Cantu*, 253 S.W.3d at 282. Giving deference to the trial court's factual findings,[9] we conclude that impairment of the defense, the most important consideration under this factor, was not shown. *Barker*, 407 U.S. at 532.

Though "actual prejudice" need not be proven, a defendant has a burden to show some prejudice due to the delay of his or her trial. *Harris*, 489 S.W.2d at 308; *Courtney v. State*, 472 S.W.2d 151, 154 (Tex. Crim. App. 1971); *Marquez v. State*, 165 S.W.3d 741, 749 (Tex. App.— San Antonio 2005, pet. ref'd). Where a defendant claims that witnesses became unavailable because of the delay, he or she must make a showing that "the witnesses are unavailable, that their testimony might be material and relevant to his case, and that he [or she] has exercised due diligence in his attempt to find them and produce them for trial." *Harris*, 489 S.W.2d at 308; *see Phipps v. State*, 630 S.W.2d 942, 947 (Tex. Crim. App. 1982) ("Even if it be conceded that the testimony of the missing witnesses was material to the instant case, the appellant has not shown diligence in procuring the witnesses as the record fails to indicate that the witnesses were subpoenaed."); *Marquez*, 165 S.W.3d at 750. Here, Speights claims that witnesses are unavailable, but makes little more than a vague, conclusory statement that amounts to his claim that he does not know where they are and that he understands one or more may be out of state. He fails to give any account for what he did, if anything, to try to find them or secure their presence at trial. And, while Speights speculates about what those witnesses might have testified to, that is just speculation in this record, which fails to demonstrate that Speights' ability to

---

[9]The trial court also found that "any prejudice that he would've had from the delays was overcome by the benefits of being allowed the opportunity to take the polygraph examination and possibly dispose of this case in a positive manner for him." While we defer to the trial court's findings of fact, this prejudice-benefit analysis was a weighing matter, which we review de novo. *See Cantu*, 253 S.W.3d at 282. We agree, however, that this point tends to ameliorate any prejudice to Speights.

14

defend himself was prejudiced by the delay. *See Phipps*, 630 S.W.2d at 947; *Harris*, 489 S.W.2d at 309.

Our review of the three prongs of the prejudice factor leads us to conclude that Speights made a prima facie showing of prejudice given the length of incarceration and uncontradicted statements of anxiety. However, because impairment to the defense was not shown, we find this *Barker* factor weighs slightly against Speights. *See Bosworth*, 2013 WL 563321, at *11.

*(e)    Balancing*

"Having addressed the four *Barker* factors, we must now balance them." *Dragoo*, 96 S.W.3d at 316. Though the length of delay weighs in Speights' favor, the prejudice factor weighs slightly against him. Add to that the facts that Speights contributed to the delay in hopes that a polygraph examination would benefit him, that he failed to request a hearing on the first motion for speedy trial, and that he failed to bring the speedy-trial issue to the trial court's attention before the day of trial—when he urged his second request for dismissal—all of which weigh against him. Given the facts of this case, we hold that the weight of the factors, when balanced together, ultimately tips the scales against Speights, and leads us to conclude that his right to a speedy trial was not violated.

*(2)    The Exposure Charge Subjected Speights to Double Jeopardy*

Speights also contends that his conviction for indecency with a child by exposure improperly subjected him to double jeopardy because it was a lesser-included offense within the charge of indecency with a child by sexual contact for which he was also convicted and sentenced.

15

A defendant must generally raise a double-jeopardy claim at the trial court level to preserve error for appellate review. *Rangel v. State*, 179 S.W.3d 64, 70 (Tex. App.—San Antonio 2005, pet. ref'd). However, when a double-jeopardy violation is clearly apparent from the face of the record, it can be raised for the first time on appeal. *Bigon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008); *Rangel*, 179 S.W.3d at 70. Here, Speights claims he was charged in one indictment for indecency with a child by sexual contact and indecency with a child by exposure, arising from the same act in two different separate counts. Thus, any error will be apparent on the face of the record and can be reviewed. *Rangel*, 179 S.W.3d at 70–71.

Our founding fathers recognized that allowing states to subject citizens to multiple trials for the same offence "would arm Government with a potent weapon of oppression." *Stephens v. State*, 806 S.W.2d 812, 816 (Tex. Crim. App. 1990) (citing *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1977)). The Fifth Amendment to the United States Constitution and Article I, Section 14 of the Texas Constitution prohibit double jeopardy and protect individuals from being tried twice for the same offense, possibly receiving double punishments. U.S. CONST. amend. V, TEX. CONST. art. I, § 14; *Albernaz v. United States*, 450 U.S. 333, 343 (1981); *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Stephens*, 806 S.W.2d at 814–15. This protection is necessary to avoid subjecting a defendant "to embarrassment, expense and ordeal . . . [,] compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187–88 (1957).

A multiple-punishments claim can arise in

16

(1) the lesser-included offense context, in which the same conduct is punished twice; once for the basic conduct, and a second time for that same conduct plus more (for example, attempted assault of Y and assault of Y; assault of X and aggravated assault of X)

*Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006) (describing types of double-jeopardy claims). Unless a

separate act occurred (a circumstance which would remove our analysis outside of the double jeopardy realm), proof of the same or less than all the facts required to establish that a person committed indecency by contact would also necessarily establish indecency by exposure during the act.

*Alberts v. State*, 302 S.W.3d 495, 502 (Tex. App.—Texarkana 2009, no pet.).

It should be remembered that the State's indictment alleged that the three charged offenses were committed on different dates. Thus, the State was not alleging that the indecency by exposure occurred on the same date as the indecency by contact. However, where the evidence "at trial shows that only one offense was committed," the State is "not entitled to seek convictions for two offenses." *Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998). We now examine the record evidence.

Nora Mitchell testified that she obtained custody of the child victim in 2008. She testified that the child "said [Speights] stuck his penis in his butt, that he touched him in the private area, and that he showed him his penis and . . . played with it in front of him." Mitchell recalled that the child victim indicated that "[Speights] came and took him out of his room and went into [Speights'] room[,]" where the child was anally assaulted. This was referred to by the parties as the "bedroom incident," which gave rise to the count of aggravated sexual assault by "penetration of the anus of" the child.

17

The child then told Mitchell that he was again assaulted "a few days later" when Speights "took [the child] into the bathroom and played with him while he was . . . playing with himself." This was referred to by the parties as the "bathroom incident," which gave rise to the count of indecency with a child by sexual contact where the defendant caused the child "to engage in sexual contact by causing the said [child] to touch the genitals o[f] the defendant."[10]  During yet another incident, Mitchell testified that the child told her that Speights "put his hand in [the child's] pants to see if he had wet his pull-up."  However, the count at issue alleged that Speights "intentionally or knowingly exposed his genitals, knowing that [the child] . . . was present."

Multiple convictions for sexual offenses that involve separate and distinct acts do not violate the Double Jeopardy Clause.  *See Huffman v. State*, 267 S.W.3d 902, 905 (Tex. Crim. App. 2008); *see also Gonzales v. State*, 304 S.W.3d 838, 847 (Tex. Crim. App. 2010) (discussing *Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999)).  To establish a double-jeopardy claim, the evidence must show that the two offenses at issue necessarily arose from "one act which could be subject to two different interpretations." *Ochoa*, 982 S.W.2d at 908.  Exposure of Speights' genitals would be necessarily subsumed within the counts alleging aggravated assault and indecency with a child by contact as alleged.  Therefore, proof of a separate act, whereby Speights exposed himself to the child, was required.  We find no such evidence in this record.

The child victim described the bedroom incident in detail.  He testified that Speights "came in my bedroom," "picked me up while I was asleep and he woke me up, and then he took

---

[10]The State argues that exposure is "not incident to and subsumed within the acts of penetration."  The facts here, and the indictment, suggest otherwise.

18

me out of my bedroom and then took me to his and then shut the door and locked it." The child said that Speights "threw me down on the bed, and then he had pulled down my pants" and "put his private in my bottom." The child said that he "felt like I was going to get crushed, but it hurt my back really bad." He experienced pain in his bottom.

Next, the victim stated that, on a separate occasion referred to as the bathroom incident, Speights touched his "private" and made him touch Speights' "private." The child also stated that Speights had touched his private "at [the child's] last house when [he] lived there" several times, and that there was another time when Speights tried to get the child to do things he did not want to do. He later said that "[t]wo things happened," but described an incident which occurred in another trailer "beside the dumpsters" when Speights "was forcing his hand down my pants, and I tried to stop him but he was too strong then. Finally, I got a pillow and put it in front of me, and then he stopped." Dickenson also testified to the incident where Speights "forced his hand into [the child's] pants."

Here, the record contains no testimony of a separate act of indecency with a child by exposure. There was testimony that Speights may have contacted the child's private on separate occasions, but this evidence failed to establish that Speights had exposed himself during those times. Testimony that Speights attempted to get the child to "do things" he did not want to do was likewise insufficient to show exposure. The only evidence of exposure placed in front of the jury contains nothing suggesting it occurred as an act separate from the aggravated sexual assault alleged to have occurred in the bedroom incident or the indecency by contact alleged to have occurred in the bathroom incident. "[A] defendant cannot be convicted for a completed act of

19

sexual assault and also for conduct that is demonstrably a part of the commission of the completed act." *Alberts*, 302 S.W.3d at 502–03 (citing *Patterson v. State*, 96 S.W.3d 427, 432–33 (Tex. App.—Austin 2002), *aff'd*, 152 S.W.3d 88, 89, 92 (Tex. Crim. App. 2004), *but overruled on other grounds by Sledge v. State*, 262 S.W.3d 492 (Tex. App.—Austin 2008, pet. ref'd)). Accordingly, we find that Speights' conviction for indecency with a child by exposure violated his right to be free from double jeopardy.

Therefore, we reverse the trial court's judgment finding Speights guilty of indecency with a child by exposure and render a judgment of acquittal with respect to that count.

We affirm the trial court's remaining judgments.


Josh R. Morriss, III
Chief Justice


CONCURRING OPINION

I agree with the result of the majority opinion, but I disagree with some of the analysis.

I. **Speedy-Trial Factors**

A. **Length of the Delay**

I agree that the four-year delay from arrest to trial is lengthy and presumptively prejudicial, requiring us to examine the other factors.

B. **Reasons for the Delay**

The explanations offered by the State for the lengthy delays in this case include (1) changing public defense attorneys, (2) a request for a polygraph examination, (3) election of

20

the district attorney as district judge, (3) lack of funds for visiting judges, and (4) busy dockets. These are not matters within the defendant's control. I would find that this factor weighs against the State.

**C.      Assertion of the Right to a Speedy Trial**

This is where many speedy-trial claims fail. Typically, the first or only motion filed by a defendant is a motion to dismiss, not a motion asserting the right to a speedy trial. That is often construed as a desire for the dismissal of the charges, not a request for a speedy trial. The typical did not occur in this case. After being incarcerated for almost two years, Speights filed a motion demanding a speedy trial in August 2010. No hearing was had on this motion until immediately before trial. However, the certificate of service attached to the motion for speedy trial averred that delivery was made to the Honorable Bobby Lockhart, who was the district attorney at the time, but later became the trial judge and remained the judge until his recusal. Thus, I cannot say that the trial court was unaware of the motion for speedy trial.

Furthermore, I note that one week after the filing of the motion for speedy trial, an application for writ of habeas corpus and motion for reasonable bond was filed on August 19, 2010. The motion pointed out that Speights was still awaiting trial and was still "illegally" confined in jail. The motion was granted on the following day, a personal recognizance bond was set at $10,000.00, which was made, and Speights was released following an order reciting that the motion for reasonable bond had been heard. At the very least, the trial court was aware of the length of Speights' confinement.

21

The State focuses on the fact that the speedy-trial issue was brought to the trial court's attention by way of a motion to dismiss and no action was taken until the day of trial, almost two years after the first motion was filed. Thus, because the speedy-trial motion was not presented to the court until the day of trial, the State concludes that this factor should weigh heavily against Speights. The State also argues that Speights' failure to make another request for speedy trial after his release on bond suggests that his intent in filing it was to be released from jail, not to be tried on the charges in the State's indictment.

In *Barker*, the court noted that "a defendant has some responsibility to assert a speedy trial claim" but "that the right to a speedy trial is unique in its uncertainty as to when and under what circumstances it must be asserted or may be deemed waived." *Barker v. Wingo*, 407 U.S. 514, 529. In rejecting the application of a rigid test to determine the assertion of the right factor, because such tests are "insensitive to a right . . . deemed fundamental," the United States Supreme Court provided for a more flexible approach.

The majority opinion cites a line of cases, including *Henson v. State*, 407 S.W.3d 764 (Tex. Crim. App. 2013), to support the argument that a speedy trial motion must be presented to the trial court in a formal hearing and that the failure to do so prior to trial weighs against Speights. I disagree with the majority's analysis of these cases.

Henson never filed a motion for a speedy trial, and the question was whether he could assert that right on appeal without preserving it. Very unremarkably, the Texas Court of Criminal Appeals held, just as many intermediate courts, including this one, that a defendant must preserve the issue for appeal. The *Henson* case had nothing to do with determining

22

whether Henson had timely asserted his speedy-trial right in the trial court. Acknowledging that the *Henson* case only addressed preservation of error, the majority then reviews *Guevara v. State*, 985 S.W.2d 590 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd), to support the notion that, even though a speedy-trial motion has been filed, it is not to be considered unless it is presented to the trial court. The Guevara case requires further analysis.

In *Guevera*, the defendant filed a pro se motion for speedy trial in his first case. The motion was never acted on, Guevara was re-indicted in another case, the original cause was dismissed, no speedy-trial motion was filed in the second case, and of course, no hearing was ever conducted. The holding was simply that Guevara waived the issue by failing to raise it in the trial court. *Id.* at 593.

These cases address error preservation; there is no doubt that Speights preserved the speedy-trial issue for appeal. The cases cited do not address the issue of whether a delay in presenting a motion for speedy trial is relevant in determining if the defendant has properly asserted that right.[11] I would afford the substantive act of filing the motion for a speedy trial much greater weight than the more procedural act of a formal presentment of the motion. Here, because (1) the first motion for speedy trial requested a hearing, (2) the trial court granted a motion for reasonable bond discussing Speights' lengthy "illegal" incarceration, and (3) the

---

[11]The majority opinion cites several other cases to support the statement that a delay in the "presentment" of a motion for speedy trial is relevant. These cases do not specifically address the issue of presentment. The *Barker* case discusses whether the objection was seriously urged or merely a "purely pro forma objection." *Barker*, 407 U.S. at 529. The other cases address the timeliness of a motion for speedy trial, not presentment. *Turner v. Estelle*, 515 F.2d 853, 857 (5th Cir. 1975) (defendant first asserted right to speedy trial nearly four years after indictment-weighed against him); *Dragoo v. State*, 96 S.W.3d 308, 314–15 (Tex. Crim. App. 2003) (defendant failed to assert right for three and one-half years, just before trial); *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992) (defendant first raised issue on day of trial); *Orasco v. State*, 827 S.W.2d 575, 577 (Tex. App—Fort Worth 1992, pet. ref'd) (defendant never asserted right to speedy trial—only dismissal).

23

motion for speedy trial was actually delivered to the person who later became the trial judge, I would find that Speights asserted his right to a speedy trial. I would find that this factor weighs in Speights' favor.

### D.    Prejudice

#### 1.    Pretrial Incarceration

Speights was incarcerated 652 days on this offense awaiting trial and, thereafter, was required to report weekly to the Pretrial Services Office. The majority finds this to be oppressive pretrial incarceration. I agree.

#### 2.    Impairment of Defense

Speights avers that several witnesses, including the victim's mother, the victim's mother's girlfriend, and the victim's maternal grandmother, were unavailable by the time the trial occurred. His affidavit presented evidence that those witnesses might have presented material and relevant evidence. The Texas Court of Criminal Appeals has held that a defendant must exercise diligence in attempting to locate the witnesses and produce them for trial. *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973). There is no evidence of the diligence used to procure the witnesses for trial. Without meeting that requirement, unavailability of the witnesses is not demonstrated. Therefore, we have no evidence that Speights' defense was hampered. Had impairment of his defense been demonstrated in this case, I believe the result would have been different.[12]

---

[12]I fail to see how the trial court or this Court can equate the prejudice from the delay to the possibility of a polygraph examination and determine that any prejudice was overcome by the benefit of taking a polygraph examination. If the delay prejudiced Speights by preventing him from presenting relevant and material testimony which he diligently sought, taking a polygraph examination would not ameliorate that prejudice.

## II.    Balancing

There are no exceptional reasons for the delays in this trial.   For two years of the four-year delay, Speights sat in jail and began to assert his right to a speedy trial.  The excuses for the delay offered by the State were those that are inherent in trial and docket management, none of which was controlled by Speights.   Nonetheless, Speights served 652 days in jail, before conviction.  I believe that Speights properly asserted his right to a speedy trial.   These factors, in my view, weigh against the State, but the most important one, the possibility that Speights' defense at trial suffered, weighs against him.   While this is an extremely close and difficult decision, on balance, I agree with the majority that the right to a speedy trial was not violated and concur in the judgment.

Jack Carter
Justice

Date Submitted:     September 12, 2013
Date Decided:      March 26, 2014

Do Not Publish

25